UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

WILLIAM OSTERWEIL,

                         Plaintiff,

              -against-

THE CITY OF NEW YORK, et al.,

                       Defendants.

---------------------------------------------------------------------- x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

**12 CV 1946 (JPO)**

## PRELIMINARY STATEMENT

On February 14, 1012, plaintiff William Osterweil, by his attorney, Vik Pawar, Esq., commenced this action in Supreme Court, New York County alleging that he was deprived of various federal constitutional rights by the City of New York, Lt. Stephen Latalardo and Police Officer Jeffrey Galvin ("City defendants"). The action was removed to the United States District Court, Southern District of New York on or about March 15, 2012. Upon information and belief, in May, 2012, Gideon Orion Oliver, Esq. was substituted for Mr. Pawar as plaintiff's attorney. Neither Mr. Pawar nor Mr. Oliver has filed a Notice of Appearance with this Court. Defendants now submit this memorandum of law in support of their motion seeking sanctions against plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants seek sanctions and relief on the grounds that plaintiff's complaint makes factual assertions that have no evidentiary support and are clearly contradicted by the evidence in this case.

## STATEMENT OF FACTS

Plaintiff brings the instant suit pursuant to 42 U.S.C. §1983 against the City defendants, alleging, *inter alia*, plaintiff was falsely arrested, subjected to a battery and thereafter subjected

to malicious prosecution.   Plaintiff also makes claims of negligence, negligent hiring and retention and defamation.  Specifically, plaintiff alleges in his complaint that on October 1, 2011, he was walking from his home in Brooklyn towards Manhattan on the walkway of the Brooklyn Bridge.  (Complaint, dated February 6, 2012, Exhibit A, ¶11). Plaintiff claims he was arrested for no reason along with other individuals who were part of an Occupy Wall Street protest group, although he was not part of the group, and was lawfully on the pedestrian walkway. (Complaint, Exhibit A, ¶ 13).  Plaintiff claims that the charges against him were eventually dismissed on the motion of the District Attorney's Office.   (Complaint, Exhibit A, ¶ 27).

On March 27, 2012, defendants served plaintiff's counsel Vik Pawar with a "safe harbor" letter pursuant to Rule 11 of the Federal Rules of Civil Procedure and requested that plaintiff withdraw his remaining claims based on the grounds that plaintiff's claims are not legally viable. (Exhibit B).  The letter pointed out that plaintiff claimed in paragraph 11 of the complaint that on October 1, 2011 at approximately 3 p.m. he was "walking from his home in Brooklyn towards Manhattan on the Brooklyn Bridge in the area designated for pedestrians."  He further alleged in paragraph 13 of the complaint that he was "arrested alongwith (sic) other arrestees who were purportedly part of the Occupy Wall Street protest group" and he "was not part of this group but yet the defendants arrested him for lawfully being on the pedestrian walkway of the Brooklyn Bridge."  The letter then explained that a Google search of plaintiff's name brings up a document authored by plaintiff just days after the incident, at http://www.shareable.net/blog/the-battle-of-brooklyn-bridge.  (Exhibit C).  In said post, plaintiff wrote that the October 1, 2011 Brooklyn Bridge march went, "In the roadbed, filling the Brooklyn bound lane with traffic, we screamed and jumped and took in the view. And not the view from the narrow, raised central walkway, where there isn't nearly enough room for the

tourists and bikers to coexist, where recently ten-foot high metal construction barriers have blocked the skyline. We were right up against the edge." Plaintiff further wrote about "Those of us running up the Brooklyn Bridge, those of us who for one glorious hour held it, occupied it with 1000 of our closest friends." This post belies the allegation that plaintiff was "on the pedestrian walkway" and that he "was not part of the group."

Upon receipt of the letter, Mr. Pawar informed me that he would confer with his client regarding withdrawing the complaint.  Mr. Pawar also advised me that if plaintiff would not agree to a dismissal of his claims, that he would seek leave to withdraw as counsel. Then, on or about May 14, 2012, Mr. Pawar informed me that he had just signed a substitution of counsel, and Mr. Osterweil's new attorney was Gideon Orion Oliver.  On the same day, I sent a version of the March 27, 2012 safe harbor letter to Mr. Oliver. (Exhibit D). To date, Plaintiff has not withdrawn his complaint and has continued to maintain this action.  Accordingly, defendants seek sanctions and attorneys' fees pursuant to Federal Rule of Civil Procedure 11(c).

## ARGUMENT

A pleading violates Rule 11 where "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law. . . ."  See Jacques v. Dimarzio, 216 F. Supp. 2d 139, 143 (E.D.N.Y. 2002); Fed. R. Civ. P. 11(b) (submitting papers to the court certifies that, after reasonable inquiry, claims are warranted by existing law or nonfrivolous argument for extension and the factual contentions have evidentiary support); "Rule 11 is explicit and unambiguous in requiring an attorney to examine the legal viability of any assertion in a paper filed with the court." Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 02 Civ. 2561, 2003 U.S. Dist. LEXIS 16908, at *34 (S.D.N.Y. Sept. 26, 2003).  Sanctions are appropriate "if it is clear there is no chance of

success and no reasonable argument to extend, modify, or reverse the law as it stands." Gambello v. Time Warner Communs., Inc., 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002); Eastway Construction Corp., v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985).

Additionally, even if the commencement of the action was not improper or sanctionable, a court will still impose sanctions if a party persists in advancing a litigation after it has become evident that there is no factual or legal support for the claim.  See Jeffrey v. Rossi, 275 F. Supp. 2d 463, 482 (S.D.N.Y. 2003) (holding that if plaintiffs were to continue to litigate case in light of newly discovered evidence, plaintiffs and counsel could be subject to sanctions); Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1469-70 (2d Cir. 1988) (holding that continued prosecution of a case where it would appear to a reasonable attorney that the factual allegations cannot be supported can subject an attorney to sanctions), rev'd in part on other grounds, 493 U.S. 120 (1989); Ford v. Temple Hosp., 790 F.2d 342, 350 (3d Cir. 1986) (holding that sanctions may be imposed for improper "continuance of the litigation" even if commencement and the initial pursuit of those claims was not sanctionable conduct); See Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse 259-260, 438 (3d ed. 2000); (acknowledging that litigants and their lawyers are under a continuing duty to correct or withdraw litigation positions based on matters that subsequently come to their attention).

Plaintiff's claims are not factually viable.  Had counsel for plaintiff conducted a reasonable investigation, he would have learned that the "facts" as recited in the complaint are clearly spurious, and plaintiff admitted he was part of the group that "took the bridge" by walking on the roadway of the Brooklyn Bridge on October 1, 2011, deliberately ignoring warnings given by a police lieutenant, announcing protesters' imminent arrest if they didn't clear the road. The statement made by plaintiff in his sharable.net post clearly indicates that the factual

assertions made in plaintiff's complaint have no merit and that there was probable cause to arrest plaintiff.   "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  All causes of action listed in the complaint are based upon plaintiff's allegations that he was falsely arrested when he was walking legally from Brooklyn to Manhattan on the *pedestrian walkway* of the Brooklyn Bridge on October 1, 2011.  Plaintiff's internet post belies that assertion, as he admits to walking on the *roadway* of the Brooklyn Bridge as part of an Occupy Wall Street demonstration.  As plaintiff admits, he was part of a group of 1000 protestors walking on the roadway of the Brooklyn Bridge, "taking the bridge," and "filling the Brooklyn bound lane with traffic."

N.Y. Penal Law, § 240.20(5) states "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: … (5) He obstructs vehicular … traffic."  Penal Law, § 240.20(5) (McKinney's 2011).  Plaintiff acknowledges that he was part of a group of 1000 protestors walking on the roadway of the Brooklyn Bridge, "taking the bridge," and "filling the Brooklyn bound lane with traffic."  which would have obstructed vehicular traffic on any Saturday afternoon.  As such, there was clearly probable cause to arrest the plaintiff.

Defendants' counsel provided a copy of the sharable.net post to plaintiff's original counsel on March 27, 2012, as an attachment to the safe harbor letter.  It was provided again to plaintiff's new counsel on May 14, 2012, also attached to the safe harbor letter.   Despite being confronted with this internet post, plaintiff has refused to withdraw the instant matter. Defendants served both of plaintiff's counsel with Rule 11 "safe harbor" letters requesting that plaintiff withdraw his claims because they were frivolous and not supported by the facts. Plaintiff has known, or reasonably should have known, that there is no factual support for his

claims.  Defendants contacted or attempted to contact Mr. Oliver several times after serving the safe harbor letter, by telephone and email.  Plaintiff has not responded, other than requesting additional time to respond.  Defendants granted several extensions, the last of which expired Thursday, June 21, 2012.  No substantive response has been forthcoming.  Despite having ample opportunity to withdraw his complaint, Plaintiff has nevertheless continued to maintain this action in bad faith with claims that have no chance of success based on the facts presently known to all parties.

## <u>CONCLUSION</u>

For the reasons set forth herein, defendants respectfully seek sanctions against plaintiff William Osterweil and/or his counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.


Dated:          New York, New York
                June 28, 2012

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                          City of New York
                                        *Attorney for defendant City of New York ,*
                                        100 Church Street
                                        New York, New York 10007


                              By:     _____/s/_____
                                        Dara L. Weiss
                                        Senior  Counsel
                                        Special Federal Litigation Division


TO:    <u>VIA HAND DELIVERY</u>
        Vik Pawar, Esq.
        Gideon Orion Oliver, Esq.

- 6 -